UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
FITZROY BROWN,                      )
INDIVIDUALLY AND AS TRUSTEE OF      )
THE OWENA O. DUNN FAMILY            )
TRUST, DATED AUGUST 29, 2002        )
            Plaintiff,              )
                                    )    Civil Action No. 13-13256-PBS
        v.                          )
                                    )
BANK OF AMERICA, NATIONAL,          )
ASSOCIATION, BANK OF AMERICA        )
NATIONAL ASSOCIATION BY MERGER      )
TO BAC HOME LOANS SERVICING,        )
LP, BAC HOME LOANS SERVICING,       )
LP, F/K/A COUNTRYWIDE HOME          )
LOANS SERVICING, LP, HARMON         )
LAW OFFICES, P.C.                   )
            Defendants.             )
                                    )
```

**ORDER**

December 22, 2014

Saris, U.S.D.J.

## I. INTRODUCTION

Plaintiff Fitzroy Brown, proceeding pro se, alleges that he
was forced to sell his home because Defendants Bank of America,
N.A. ("BANA") and BAC Home Loans Servicing, LP ("BAC"),[1] engaged
in a pattern of delay and misrepresentations that prevented him
from modifying his loan and avoiding foreclosure. BANA/BAC now

---

[1]BANA and BAC merged in July 2011 with BANA as the sole
surviving entity. See Docket No. 29 ¶ 4. The Court uses "BANA" and
"BAC" to refer to the pre-merger entities, and "BANA/BAC" to refer
to the single entity formed after the merger.

1

seeks to dismiss the complaint. After a hearing, the Court **ALLOWS** in part and **DENIES** in part BANA/BAC's Motion to Dismiss (Docket No. 33).

## II. FACTUAL BACKGROUND

The facts alleged in the Amended Complaint are taken as true for purposes of this motion to dismiss. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667 (2009).

This case stems from the nation's recent foreclosure crisis. In 2007, Plaintiff Fitzroy Brown obtained a loan from BANA, which was secured by a mortgage on his home at 41 Armandine Street in Boston, MA.[2] By September 2009, Brown had fallen behind on his loan payments and faced foreclosure. As a result, BANA mailed Brown a letter offering him "a new program to help you keep your home." As part of this program, BANA asked Brown to send in his financial documents so that he could be evaluated for loss mitigation assistance. Seizing this opportunity to avoid foreclosure, Brown followed the instructions and sent in his financial documents. But BANA never followed up with him and ignored his repeated inquiries about the progress of his application. Eventually, BANA told Brown that it never received his documents, which was false.

Later that year, BAC took over as servicer for Brown's loan

---

[2]BANA later assigned the mortgage to the Federal National Mortgage Association but continued to act as Brown's loan servicer.

2

and invited him to apply for the Home Affordable Modification Program ("HAMP"), a federal program that allows qualified homeowners to reduce their monthly mortgage payments.[3] Brown called BAC in November 2009 to ask if he could participate. A BAC representative told him that he qualified for a HAMP modification but needed to call again in February 2010 to formally apply

Given BAC's instructions to wait until February, Brown was surprised to receive a notice of intention to foreclose from BAC in January 2010. To figure out what was happening, Brown called BAC. This time, BAC told Brown that he was approved for a HAMP three-month trial period plan ("TPP"). The representative promised that Brown's loan would be permanently modified once he faxed over his financial documents and made payments of $1349 for the next three months.

Brown again complied, sending his financial information and making monthly TPP payments over the next four months. But BAC did not hold up its end of the bargain and grant a loan modification. Instead, BAC mailed numerous HAMP application packages for Brown to complete. And when Brown called BAC to ask about the delay, the company told him that he had failed to send in the necessary financial documents. None of this made sense, given that Brown had already faxed over his financial information

---

[3] For additional background information about HAMP, see Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228-29 (1st Cir. 2013), and the cases cited therein.

and was making TPP payments. To add to the confusion, BAC later informed Brown over the phone that there was a pending date for a foreclosure sale, and so BAC would not accept any more payments from him. All of this was inconsistent with what the BAC representative had told him in February-that he would receive a loan modification and halt the foreclosure process if he sent in his financial information and made monthly TPP payments, which is precisely what Brown did.

Around the same time, Brown also began to receive notices from Harmon Law Offices, P.C. (Harmon), which said that it had been hired by BAC to foreclose on his mortgage. On October 22, 2010, Harmon mailed a notice of intent to foreclose and acceleration of the note. This notice claimed that Brown owed a total outstanding balance of $325,861.42. Feeling that foreclosure was inevitable at this point-especially given BAC's lack of good faith in helping him get a loan modification-Brown sold his home on January 18, 2011.

Because the sale was not enough to make up Brown's debt, BAC continued to contact and harass him in 2011. As a result, Brown hired an attorney in June 2011 to receive all communications from BAC. Nonetheless, he continued to receive phone calls and letters from BAC regarding foreclosure. After BAC and BANA merged into BANA/BAC, the company again threatened to foreclose on Brown in November 2011.

Curiously, BANA/BAC never followed through on its threats. Instead, the bank discharged Brown's mortgage in September 2012. Brown also received a check for $2000 in April 2013 pursuant to an agreement between BANA/BAC and federal banking regulators involving the bank's deficient mortgage servicing and foreclosure processes. Additionally, BANA/BAC wrongly purchased and charged Brown for hazard insurance for several years, even though he had already purchased insurance on his own. To refund him for these erroneous charges, BANA/BAC sent Brown a check for $2129 in September 2012.

### III. PROCEDURAL HISTORY

In July 2013, Brown sent BANA/BAC a demand letter under Mass. Gen. Laws ch. 93A ("Chapter 93A"), and BANA/BAC responded. Brown then filed a complaint in Massachusetts state court, which BANA/BAC removed to this Court. (Docket No. 4). In February 2014, Brown filed an amended complaint (Docket No. 29), which raised 9 claims for relief: violations of Mass. Gen. Laws ch. 93A (Counts 1-3); breach of oral (Count 4) and written contract (Count 5); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, (Count 6); unjust enrichment/restitution (Count 7); negligent misrepresentation (Count 8); and declaratory relief (Count 9). Brown voluntarily dismissed Harmon. (Docket No. 48). BANA/BAC's motion to dismiss is now ripe for resolution. (Docket No. 33).

## IV. DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (quotation marks omitted). Dismissal is appropriate if the complaint fails to set forth factual allegations respecting each material element necessary to sustain recovery under a legal theory. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008).

In considering the adequacy of the pleadings, the Court accepts all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. <u>Schatz</u>, 669 F.3d at 55. The Court "must consider the complaint, documents annexed to it, and other materials fairly incorporated within it," which "sometimes includes documents referred to in the complaint but

not annexed to it." <u>Rodi v. S. New Eng. Sch. Of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004). Also, the Court construes <u>pro se</u> complaints, like Brown's, liberally. <u>See</u> <u>Dutil v. Murphy</u>, 550 F.3d 154, 158 (1st Cir. 2008) ("[W]e are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects.").

**A. Chapter 93A Claims (Counts 1-3)**

Brown first raises claims under the Massachusetts Consumer Protection Act, otherwise known as Chapter 93A (Counts 1-3). Count 1 alleges that BANA/BAC charged him for hazard insurance for several years when he had already purchased insurance on his own. Counts 2-3 allege that BANA/BAC engaged in a pattern of delay and misrepresentation in response to his attempts at obtaining a loan modification, which eventually forced Brown to sell his home as BANA/BAC continued to pursue foreclosure. BANA/BAC responds that Brown's claims are deficient because they do not sufficiently allege: (1) an unfair or deceptive practice committed by BANA/BAC; or (2) economic injury. The Court agrees that Count 1 fails to sufficiently allege an economic injury. But Counts 2 and 3 pass Rule 12(b)(6) inspection.

To allege a violation of Chapter 93A, a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive act, causing economic injury to the plaintiff. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (citing Mass Gen. Laws. c. 93A §§ 2, 11). Conduct is "deceptive" when "it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 488 (Mass. 2004). Meanwhile, courts consider several factors to determine whether conduct is "unfair": (1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen). Mass. Eye & Ear Infirmary, 552 F.3d at 69. Courts must also "evaluate the equities between the parties." Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008) (quoting Swanson v. Bankers Life Co., 450 N.E.2d 577, 580 (Mass. 1983)). Ultimately, "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function." Mass. Eye & Ear Infirmary, 552 F.3d at 69.

A Chapter 93A claimant must also sufficiently plead economic injury. Despite some remaining "tension" between earlier and later SJC decisions, Massachusetts courts now generally "have returned to the notion that injury under chapter 93A means economic injury in the traditional sense." Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010). As a result, "merely proving an unfair or deceptive act by the defendant directed at the consumer" is insufficient to establish injury to that consumer. Id. at 254. Instead, "the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself." Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013).

Applying these principles here, the Court must dismiss Count 1 because it does not sufficiently explain how Brown suffered an economic injury from BANA/BAC's improper purchase of hazard insurance. Brown's sole assertion of harm is that the "cumulative emotion [sic] toll and stress of the situation left plaintiff with extreme anxiety and gaps in memory." But even with a liberal reading of Brown's amended complaint, this conclusory assertion of emotional distress falls short of establishing economic injury.

The Court recognizes that Chapter 93A permits recovery for "a personal injury loss such as emotional distress, even if the consumer lost no money or property." Hershenow v. Enter. Rent-A-

Car Co. of Boston, Inc., 840 N.E.2d 526, 533 (Mass. 2006) (citing

Haddad v. Gonzalez, 576 N.E.2d 658, 664-65 (Mass. 1991)). To

establish emotional distress damages under Chapter 93A, however,

a plaintiff must establish: (1) that the actor intended to

inflict emotional distress or that he knew or should have known

that emotional distress was the likely result of the conduct; (2)

that the conduct was "extreme and outrageous"; (3) that the

actions of the defendant were the cause of the plaintiff's

distress; and (4) that the emotional distress sustained by the

plaintiff was "severe." Haddad, 576 N.E.2d at 667. (quotation

marks omitted).

Taking into account this stringent standard, Brown's single-

sentence assertion of emotional harm fails to cover at least two

bases. To begin with, Brown does not explain how BANA/BAC's

purchase of hazard insurance was extreme and outrageous. Quite to

the contrary, Brown attaches to his complaint the letter sent by

BANA/BAC shortly after it purchased the insurance. This letter

explains that BANA/BAC purchased the insurance pursuant to

Brown's loan agreement, which requires insurance coverage on the

home at all times. The letter also states: "In the event that you

have your own policy: You will receive a full refund . . ." Brown

needs to explain how these actions are "beyond all possible

bounds of decency" or "utterly intolerable in a civilized

community." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014).

Similarly, Brown has also not alleged any facts regarding
BANA/BAC's state of mind. Brown does not allege that BANA/BAC
intended to cause him emotional distress. Nor has he alleged that
the company should have known that charging him for insurance
would likely cause emotional distress. Although Brown's pro se
complaint is entitled to be construed liberally, he must address
these elements in order to state a Chapter 93A claim for
emotional distress damages. See Gaskins v. Dickhaut, 962 F. Supp.
2d 336, 339 (D. Mass. 2013) ("Although courts are to construe
liberally the allegations of pro se plaintiffs and review them
under a more forgiving standard, courts must refrain from
conjuring up unpled allegations to give life to a phantom cause
of action." (citing McDonald v. Hall, 610 F.2d 16, 19 (1st Cir.
1979)).[4] As a result, Count 1 will be dismissed.

Counts 2 and 3, however, are a different story. These counts
allege that BANA/BAC engaged in a pattern of misrepresentation
and delay in response to Brown's attempts to modify his loan, all
while adding fees and costs and continuing to move forward with

---

[4]To the extent that Brown argues that BAC lacked the
authority to collect mortgage payments, negotiate loan
modifications, or seek foreclosure, this argument fails on the
face of the complaint and the documents cited therein. Paragraph
20 of Brown's mortgage defines a "loan servicer" as the entity
"that collects Periodic Payments . . and performs other mortgage
loan servicer obligations . . . There also might be one or more
changes of the Loan Servicer unrelated to a sale of the Note."
Thus, BAC could pursue foreclosure, collect payments, and offer
loan modifications on behalf of the noteholder even without a
formal assignment to BAC.

foreclosure. Because of BANA/BAC's misconduct, Brown argues that
he was unable to obtain a HAMP modification or loss mitigation
assistance. He also lost the opportunity to apply for other forms
of mortgage relief. On top of that, Brown was forced to sell his
home. These allegations are sufficient to allege a Chapter 93A
claim.

To begin with, Brown sufficiently alleges unfair or
deceptive conduct on the part of BANA/BAC. Courts have held that
a bank's handling of efforts to obtain a home loan modification
can be independently actionable under Chapter 93A when the
conduct is an unfair or deceptive business practice in and of
itself. See Dill v. Am. Home Mortg. Serv., Inc., 935 F. Supp. 2d
299, 306 (D. Mass. 2013) (Chapter 93A claim for misleading
plaintiffs regarding criteria for HAMP modification and status of
their modification application); Kozaryn v. Ocwen Loan Serv.,
LLC, 784 F. Supp. 2d 100, 102-03 (D. Mass. 2011) ("A violation of
HAMP that is unfair or deceptive in and of itself could,
therefore, create a viable claim under Chapter 93A even though
HAMP does not provide a private cause of action."); see also
Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir.
2013) ("Young's Chapter 93A claim . . . includes defendants'
handling of her entire case, beginning with the negotiations
surrounding her forbearance agreement through her attempts to
obtain a permanent loan modification.").

To be independently actionable, however, a loan servicer's conduct must be "more than mere technical violations and clerical errors." Okoye v. Bank of N.Y. Mellon, 2011 WL 3269686, at *9 (D. Mass. July 28, 2011); see also Morris v. BAC Home Loan Serv., L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011) (explaining that "not every technical violation of HAMP should expose a servicer to Chapter 93A liability"). For example, plaintiffs have successfully survived the motion to dismiss stage when they "alleged a pattern or course of conduct involving misrepresentations, delay, and evasiveness in evaluating a HAMP application." Hanrahran v. Specialized Loan Serv., LLC, ___ F. Supp. 3d ___, 2014 WL 5389829, at *4 (D. Mass. Oct. 23, 2014) (collecting cases); see also Hannigan v. Bank of America, N.A., ___ F. Supp. 3d ___, 2014 WL 4783635, at *6 (D. Mass. Sept. 24, 2014) (denying motion to dismiss when "plaintiffs applied numerous times for a modification under HAMP and . . . Bank of America repeatedly required that they re-submit information that they had previously provided"); Okoye, 2011 WL 3269686, at *9 (observing that "[t]he few Chapter 93A claims that have survived motions to dismiss have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank").

Morris is especially helpful in illustrating the line between a technical violation of HAMP and a Chapter 93A

violation. When the <u>Morris</u> plaintiffs filed their initial
complaint, they merely alleged that their loan servicer did not
"timely provide the appropriate notifications" and offered "a
non-HAMP modification agreement." 775 F. Supp. 2d at 263. The
Court found that these allegations did not demonstrate
"<u>unfairness</u>, as opposed to minor delay or trivial clerical
flaws." <u>Id.</u> (emphasis added). At the hearing, however, the
plaintiffs further alleged that their loan servicer "had a
history of being nonresponsive to the plaintiffs' efforts to
obtain a loan modification, and that a prior such effort had
yielded <u>higher</u> monthly payments, an error that [the loan
servicer] made little or no effort to fix." <u>Id.</u> As a result, the
Court granted leave for the plaintiffs to amend their complaint
to explain how their loan servicer had "unfairly disregarded and
mishandled" their HAMP application. <u>Id.</u>

     With these principles in mind, Counts 2 and 3 pass muster
under Chapter 93A because they allege a pattern of
misrepresentation and delay in response to Brown's attempts at
applying for mortgage assistance. He claims that he sent his
financial information to BANA in 2009 to apply for loss
mitigation assistance. But BANA never got back to him and
eventually told him that they never received his documents, which
was false. Things did not get better after BAC took over. Brown
says that the company promised a permanent loan modification if

he sent in his documents and made three payments. Despite following these instructions to a tee, however, BAC never followed through on its end of the bargain. Instead, BAC continued to use delay tactics, telling Brown he needed to fill out more HAMP applications and resend his documents. On top of all this, BAC continued to pursue foreclosure on Brown's property, adding fees and charges to his account. This kind of systematic delay, misrepresentation, and bureaucratic sandbagging is enough to allege an unfair or deceptive business practice under Chapter 93A.

Brown also adequately alleges economic injury. He argues that BANA/BAC's actions resulted in an increased interest rate, loss of the opportunity to refinance, and the forced sale of his home. See Young, 717 F.3d at 241 (finding alleged damages of "loss of equity in [plaintiff's] home and damage to [his] credit ratings" was not too speculative). As a result, BANA/BAC's motion to dismiss Counts 2 and 3 will be denied.

BANA/BAC responds that its conduct was not deceptive or unfair because the property was not Brown's primary residence, and he therefore was not eligible for HAMP. To support this argument, BANA/BAC attaches to its motion (1) a July 2010 HAMP application filled out by Owena Dunn stating that Brown was no longer living at the Armandine Street property; and (2) a February 2011 letter sent to Brown denying his HAMP application

for this reason. While relevant, this evidence is more
appropriately addressed at summary judgment after Brown has an
opportunity to conduct discovery and respond to these documents.
See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 73 (1st Cir.
2014) ("When discovery has not begun and the nonmovant has had no
reasonable opportunity to obtain and submit additional
evidentiary materials to counter the movant's evidence,
conversion of a Rule 12 motion to a Rule 56 motion is
inappropriate." (quotation marks and alterations omitted)). As a
result, the Court will set aside BANA/BAC's objection for now and
allow Counts 2 and 3 to proceed.

**B. Breach of Contract Claims (Counts 4-5)**

Brown's amended complaint next raises two breach of contract
claims (Counts 4-5). Count 4 alleges that Brown entered into an
oral contract with BAC in February 2010. According to Brown, he
agreed to submit his financial documents and three TPP payments
in exchange for a permanent loan modification and a hiatus in the
foreclosure proceedings. While he upheld his end of the bargain,
however, BAC did not. BANA/BAC responds that this oral agreement
never existed. And even if it did, BANA/BAC asserts that the
contract lacked consideration because Brown was under a pre-
existing obligation to make loan payments. Both of these
challenges miss the mark.

To begin with, BANA/BAC's factual assertion that an oral

contract never existed is again best addressed at summary judgment, when the entire record will be before the Court. BANA/BAC points out that it rejected Brown's HAMP application after finding that the Armandine Street property was not Brown's primary residence. As a result, there was never any TPP plan or agreement in place. But Brown's version of the facts is to the contrary. Brown alleges that a BAC representative told him on the phone that he had been approved for a TPP plan and would receive a HAMP loan modification if he made three payments and submitted additional financial information. This factual dispute is best resolved at summary judgment.

Count 4 also sufficiently alleges a contract supported by consideration. Granted, Brown's TPP payments alone do not constitute adequate consideration because Brown owed a pre-existing obligation to make payments on his mortgage. See Sloan v. Burrows, 258 N.E.2d 303, 305 (Mass. 1970) ("Since the duty to pay this amount already existed under the agreement, the rule that performance of an existing legal duty or contractual obligation is not sufficient consideration for a new promise by the obligee applies."). Crucially, however, Brown also alleges that he was "required to provide documentation of [his] current income [and] make legal representations about [his] personal circumstances." Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 352 (D. Mass. 2011) (quoting Durmic v. J.P. Morgan Chase

17

Bank, N.A., 2010 WL 4825632, at *3 (D. Mass. Nov. 24, 2010)); see also Belyea v. Litton Loan Serv., LLP, 2011 WL 2884964, at *8 (D. Mass. July 15, 2011). "These conditions of the TPP all constitute new legal detriments to plaintiff[] that flowed from [his] acceptance of the TPP" and satisfy the consideration requirement. Bosque, 762 F. Supp. 2d at 352. Brown therefore has sufficiently alleged the peppercorn to support the oral contract in Count 4.[5]

With respect to Count 5, Brown alleges that BANA/BAC breached several provisions of the HAMP Servicer Participation Agreement. BANA/BAC argues that this claim must be dismissed because Brown is not an intended third-party beneficiary of the agreement, which is between BANA/BAC and the federal government. Brown agrees, and this count will be dismissed. Docket No. 36:13; MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491-92 (1st Cir. 2013) (agreeing that borrowers are not third-party beneficiaries of agreements between mortgage lenders and the government).

---

[5]In Count 7, Brown alternatively pleads a quasi-contractual claim for unjust enrichment and restitution. It is well-established that "a claim of unjust enrichment will not lie where there is a valid contract that defines the obligations of the parties." Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849 (Mass. 2013); see also Okoye, 2011 WL 3269686, at *15 n.15 ("Chapter 93A and properly pled breach-of-contract claims are appropriate legal remedies that preclude equitable relief here."). Nevertheless, a plaintiff is entitled to plead alternative theories of recovery. See In re Hilson, 863 N.E.2d 483, 492 (Mass. 2007) ("Modern rules of pleading permit alternative pleading."). As a result, Count 7 will not be dismissed, even though Brown will not be entitled to recovery under both theories.

## C. FDCPA Violation (Count 6)

Count 6 of the amended complaint alleges that BANA/BAC engaged in debt collection activities barred by the FDCPA including, among other things: (1) failure to validate the debt or provide debt collection warnings; (2) failure to cease collection activities after Brown hired an attorney; (3) subjecting Brown to harassment and abuse; and (4) making false or misleading representations. BANA/BAC argues that Brown's claims are barred by the FDCPA's statute of limitations. The Court agrees.

The FDCPA contains an explicit one-year statute of limitations: a suit must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The last potential violation of the FDCPA alleged by Brown is on November 16, 2011, when BANA/BAC sent him a notice of foreclosure. But this was more than a year before Brown filed his initial complaint in September 2013. Brown responds that BANA/BAC also sent a mortgage discharge notice, which was postmarked February 13, 2013. But he does not explain how this notice constituted a violation of the FDCPA. To the contrary, BANA/BAC's discharge of the mortgage seems more like a release of debt than a collection. Without further explanation as to how BANA/BAC violated the FDCPA during the 12 months before he filed his complaint, Brown's FDCPA claims against BANA/BAC must be dismissed as time-barred.

**D. Negligent Misrepresentation (Count 8)**

In Count 8, Brown alleges that BANA/BAC is liable for
negligent misrepresentations made to him, especially BAC's
promise that he would receive a loan modification and a hiatus in
the foreclosure process if he submitted his financial information
and made three TPP payments. BANA/BAC responds that (1) BAC never
promised Brown anything because he was rejected for HAMP; and (2)
any injury he suffered was simply the result of his admitted
default. Reading Brown's complaint liberally, these challenges
fail.

For starters, the Court again reserves judgment on
BANA/BAC's assertion that the February 2010 agreement between BAC
and Brown never happened. That argument will be addressed at
summary judgment. As previously mentioned, a motion to dismiss is
not the proper time to determine whose version of the facts
reigns supreme.

Brown also sufficiently alleges a pecuniary loss caused by
BANA/BAC's alleged misrepresentations. To plead a claim of
negligent misrepresentation, a plaintiff must establish, among
other things, that his reliance on the defendant's false
information resulted in pecuniary loss. Braunstein v. McCabe, 571
F.3d 108, 126 (1st Cir. 2009). Loss of mortgage payments alone
does not satisfy the harm requirement because the money was
already due on the mortgage agreement. Bosque, 762 F. Supp. 2d at

20

352; <u>Kiluk v. Select Portfolio Servicing, Inc.</u>, 2011 WL 8844639, at *5 (D. Mass. Dec. 19, 2011). Here, Brown alleges that BAC's misrepresentations caused the loss of four TPP payments. But the amended complaint also previously mentioned injuries resulting from the HAMP loan modification process, including payment of improper fees and charges, unreasonably high mortgage payments, damage to credit, loss of time, and accumulation of interest. As a result, the Court will construe Brown's <u>pro se</u> pleadings broadly and allow his negligent misrepresentation claim to proceed.

**F. Declaratory Relief (Count 9)**

Finally, Brown seeks a declaration that BANA/BAC violated various statutory, legal, and contractual duties (Count 9). But he does not specify which statutes, laws, or contracts have been violated. He also seeks a declaration regarding the ownership of the Armandine Street property, as well as any liens that were on the property prior to the sale. But he similarly does not explain why there is a dispute. Without more allegations as to what declarations Brown seeks and why he is entitled to that relief, the claim must be dismissed. <u>See</u> <u>Foley</u>, 772 F.3d at 79 (explaining that even for <u>pro se</u> plaintiffs, courts are not "pigs hunting for truffles in the record" (quotation marks and alterations omitted)). To the extent that Count 9 simply seeks relief that is already covered in his other claims, as well as ¶

1 of the Prayer for Relief section (which asks for declaratory relief), the Court also dismisses Count 9 as duplicative.

## **V. ORDER**

BANA/BAC's Motion to Dismiss (Docket No. 33) is **ALLOWED** as to Counts 1, 5-6, and 9 and **DENIED** as to Counts 2-4 and 7-8.

/s/ PATTI B. SARIS
PATTI B. SARIS
Chief United States District Judge